IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:14-CV-220-D

| | | |
|---|---|---|
| MAGGIE JANE WOODS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

In this action, plaintiff Maggie Jane Woods ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security Carolyn W. Colvin ("Commissioner") denying her application for supplemental security income ("SSI") on the grounds that she is not disabled. The case is before the court on the respective parties' motions for judgment on the pleadings. (D.E. 26, 27). Each party filed a memorandum in support of its motion. (D.E. 26-1, 28). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* D.E. 29). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the final decision of the Commissioner be affirmed.

I.  BACKGROUND

   A.  **Case History**

Plaintiff filed an application for SSI on 4 May 2011, alleging a disability onset date of 1 January 2004. Transcript of Proceedings ("Tr.") 8. The application was denied initially and upon reconsideration, and a request for hearing was timely filed. Tr. 8. On 13 December 2012, plaintiff appeared for a hearing before an Administrative Law Judge ("ALJ"), but it was

postponed to enable plaintiff to seek representation and to permit acquisition of additional medical records. Tr. 8, 29-45. On 5 February 2013, another hearing was convened before the same ALJ, at which plaintiff, plaintiff's niece, and a vocational expert ("VE") testified. Tr. 8, 46-92. In a written decision dated 31 May 2013, the ALJ found that plaintiff was not disabled and therefore not entitled to SSI. Tr. 8-17. Plaintiff timely requested review by the Appeals Council. Tr. 4. The Appeals Council denied the request for review on 28 July 2014. Tr. 1-3. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 416.1481. Plaintiff commenced this proceeding for judicial review on 25 September 2014, pursuant to 42 U.S.C. § 1383(c)(3). (*See In Forma Pauperis* ("IFP") Mot. (D.E. 3); Order Allowing IFP Mot. (D.E. 7); Compl. (D.E. 8)).

**B.     Standards for Disability**

The Social Security Act ("Act") defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). "[A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

The disability regulations under the Act ("Regulations") provide the following five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["Listings"] and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. § 416.920(a)(4)(i)-(iv).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 416.923. If a medically severe combination of impairments is found, the combined impact of those impairments must be considered throughout the disability determination process. *Id.*

## C. ALJ's Findings

Plaintiff was 45 years old on the date she filed her application for SSI in May 2011 and 47 years old on the date of the administrative hearing in February 2013. *See* Tr. 16 ¶ 6; 65. The ALJ found that she has a limited education. Tr. 16 ¶ 7; *see also* Tr. 65 (plaintiff's testimony that she completed eighth grade); 20 C.F.R. § 416.964(b)(3) (defining limited education generally as the seventh through eleventh grade level of formal education).

Applying the five-step analysis of 20 C.F.R. § 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since the date of her application. Tr. 10 ¶ 1. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: degenerative disc disease of the lumbar spine, asthma, obesity, and borderline intellectual functioning. Tr. 10 ¶ 2. At step three, the ALJ found that plaintiff's impairments did not meet or medically equal any of the Listings. Tr. 12 ¶ 3.

The ALJ next determined that plaintiff had the RFC to perform light work—that is, to lift and carry up to 20 pounds occasionally and 10 pounds frequently, and to stand, walk, and sit for 6 hours in an 8-hour day. Tr. 13 ¶ 4; *see* 20 C.F.R. § 416.967(b).[1] He further found that plaintiff was subject to the following limitations:

> [T]he claimant must avoid concentrated exposure to pulmonary irritants, such as fumes, odors, dusts, gases, poor ventilation and the like, temperature extremes of heat, and workplace hazards, such as dangerous moving machinery and unprotected heights. The claimant can do no climbing of ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and/or crawl. The claimant is capable of performing simple, routine, repetitive tasks ["SRRTs"]. The claimant is able to maintain concentration, persistence, and pace to stay on task for 2 hours at a time during an 8-hour workday. The claimant requires a low stress work setting, which is further

---

[1] *See also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "L-Light Work," http://www.oalj.dol.gov/libdot.htm (last visited 2 Dec. 2015). "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. § 416.967.

> defined as a work setting that is not production pace or quota-based, rather a goal-oriented job that primarily deals with things as opposed people, with no more than occasional changes in the work setting and no more than occasional decision making as part of a job.

Tr. 13-14 ¶ 4.

The ALJ found at step four that plaintiff had no past relevant work. Tr. 16 ¶ 5. At step five, the ALJ accepted the testimony of the VE and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of electronics worker, small parts assembler, and laundry folder. Tr. 16-17 ¶ 9. The ALJ accordingly concluded that plaintiff was not disabled from the date she filed her application, 4 May 2011. Tr. 17 ¶ 10.

### D. Standard of Review

Under 42 U.S.C. § 405(g) and 1383(c)(3), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Id*.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir.

1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## II. OVERVIEW OF PLAINTIFF'S CONTENTIONS

Plaintiff asserts that the ALJ's decision should be reversed and SSI awarded or, alternatively, that the case should be remanded for a new hearing on the grounds that the ALJ improperly evaluated the medical opinion evidence and relied on an improper hypothetical to the VE. Each ground is discussed in turn below.

## III. ALJ'S EVALUTION OF MEDICAL OPINION EVIDENCE

Plaintiff contends that the ALJ erred by failing to consider the opinions of consulting nonexamining psychiatrist Betty B. Aldridge, Psy.D., and by giving great weight to the opinions of examining consulting psychologist William Link, Psy.D., and those of examining consulting psychological provider Jerry L. Miller, M.A., and psychologist Philip Hatfield, Ph.D., who co-signed the report on Mr. Miller's examination. The contentions fail.

## A. Applicable Legal Standards

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). An ALJ must consider all medical opinions in a case in determining whether a claimant is disabled. *See id.* § 416.927(b); *Nicholson v. Comm'r of Soc. Sec. Admin.*, 600 F. Supp. 2d 740, 752 (N.D.W. Va. 2009) ("Pursuant to 20 C.F.R. §§ 404.1527(b), 416.927(b), an ALJ must consider all medical opinions when determining the disability status of a claimant.").

The Regulations provide that opinions of treating physicians and psychologists on the nature and severity of impairments are to be accorded controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2); *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *2 (2 July 1996). Otherwise, the opinions are to be given significantly less weight. *Craig*, 76 F.3d at 590. In this circumstance, the Regulations prescribe factors to be considered in determining the weight to be ascribed, including the length and nature of the treating relationship, the supportability of the opinions, and their consistency with the record. 20 C.F.R. § 416.927(c)(2)-(6).

The ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating

source's medical opinion and the reasons for that weight." Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *5; *see also* 20 C.F.R. § 416.927(c)(2); *Ashmore v. Colvin*, No. 0:11-2865-TMC, 2013 WL 837643, at *2 (D.S.C. 6 Mar. 2013) ("In doing so [*i.e.*, giving less weight to the opinion of a treating physician], the ALJ must explain what weight is given to a treating physician's opinion and give specific reasons for his decision to discount the opinion.").

The same basic standards that govern evaluation of the opinions of treating medical sources not given controlling weight and explanation of the weight given such opinions apply to the evaluation of opinions of examining, but nontreating sources, and nonexamining sources. *See* 20 C.F.R. § 416.927(c), (e); *Casey v. Colvin,* No. 4:14–cv–00004, 2015 WL 1810173, at *3 (W.D. Va. 12 Mar. 2015), *rep. & recomm. adopted by* 2015 WL 1810173, at *1 (21 Apr. 2015); *Napier v. Astrue*, No. TJS-12-1096, 2013 WL 1856469, at *2 (D. Md. 1 May 2013). More weight is generally given to the opinions of a treating source than to the opinions of a nontreating examining source and to the opinions of an examining source than the opinions of a nonexamining source. *See* 20 C.F.R. § 416.927(c)(1), (2). Under appropriate circumstances, however, the opinions of a nontreating examining source or a nonexamining source may be given more weight than those of a treating source. *See*, *e.g.*, Soc. Sec. Ruling 96–6p, 1996 WL 374180, at *3 (2 July 1996).

The factors used to determine the weight to be accorded the opinions of physicians and psychologists (and other "acceptable medical sources") not given controlling weight also apply to the opinions of providers who are deemed to be at a different professional level (or so-called "other sources"). *See* Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *2, 4 (9 Aug. 2006); *see also* 20 C.F.R. § 416.913(d)(1) (partial listing of "other sources"). As with opinions from physicians and psychologists, the ALJ must explain the weight given opinions of other sources

and the reasons for the weight given. *See* Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *6; *Napier*, 2013 WL 1856469, at *2. The fact that an opinion is from an acceptable medical source may justify giving that opinion greater weight than an opinion from a source that is not an acceptable medical source, although circumstances can justify giving opinions of sources that are not acceptable sources greater weight. Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *5.

Opinions from medical sources on the ultimate issue of disability and other issues reserved to the Commissioner are not entitled to any special weight based on their source. *See* 20 C.F.R. § 416.927(d); Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *2, 5 (2 July 1996). But these opinions must still be evaluated and accorded appropriate weight. *See* Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *3.

### B. ALJ's Evaluation of the Opinions of Dr. Aldridge

Dr. Aldridge completed the mental health portions of the disability determination explanation form from the state Disability Determination Services ("DDS")[2] at the reconsideration level, dated 19 December 2011. *See* Tr. 126-27, 130-32. As to the so-called paragraph B criteria of the Listings, she found plaintiff to have mild restriction of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation of extended duration. Tr. 127. In her mental RFC assessment, Dr. Aldridge found plaintiff moderately limited in the ability to understand and remember detailed instructions, but able to understand and remember simple instructions; moderately limited in the ability to carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms, and

---

[2] DDS is a North Carolina state agency that makes decisions on applications for disability under the Social Security program. *See* DDS, http://www.ncdhhs.gov/assistance/disability-services/disability-determination-services (last visited 2 Dec. 2015).

perform at a consistent pace without an unreasonable number and length of rest periods, but able to sustain sufficient attention to complete simple routine tasks for two hours at a nonproductive pace; and moderately limited in the ability to respond appropriately to changes in the work setting and set realistic goals or make plans independently of others, but able to function with a stable work assignment.  Tr. 131-32.  Dr. Aldridge concluded that plaintiff was capable of SRRTs in a low-stress, low-production setting.  Tr. 132.

Plaintiff contends that the ALJ failed to consider Dr. Aldridge's opinions, including specifically the limitations she found plaintiff to have.  While it is true that the ALJ did not use Dr. Aldridge's name in discussing her opinions, the ALJ clearly did discuss them.  The ALJ addressed the opinions of the nonexamining state agency consultants collectively, without identifying any of them by name.  He did, though, cite to the exhibits containing the disability determination explanation forms with the opinions of the consultants, including the exhibit containing the form completed by Dr. Aldridge, Exhibit 5A.

The ALJ explained his attribution of great weight to the opinions of Dr. Aldridge and the other nonexamining state agency consultants:

> As for the opinion evidence, the undersigned notes that the State agency reviewers submitted detailed reports, which included thorough examinations of the medical evidence of record (See Exhibits 2A, 5A).  The undersigned finds that these opinions were consistent with the longitudinal medical record and accordingly gives these findings great weight. . . . While the DDS psychological consultants only assessed moderate restriction in the domain of maintaining concentration, persistence or pace, they identified the need for a work setting consistent with simple, routine, repetitive tasks (SRRTs), low stress, and low production.  Considering these factors, along with the claimant's marginal effort at her consultative exams, the undersigned finds moderate restriction in the domain of social functioning is also warranted, even though DDS did not assign any social problems.

Tr. 15 ¶ 4.  Substantial evidence supports the ALJ's analysis, including the evidence discussed herein.

10
Case 7:14-cv-00220-D   Document 30   Filed 12/02/15   Page 10 of 18

The ALJ's RFC determination confirms that he gave the opinions of Dr. Aldridge great weight. Echoing Dr. Aldridge's conclusions, the RFC determination limits plaintiff to SRRTs in a low-stress work setting that is not production pace or quota-based. Tr. 13 ¶ 4. He also added the social functioning-related restriction that plaintiff's work deal primarily with things and not people. Tr. 13-14 ¶ 4.

Thus, the ALJ not only considered and discussed Dr. Aldridge's opinions, but he included restrictions in his RFC determination that went beyond those provided for by her. Plaintiff's challenge to the ALJ's decision based on his alleged nonconsideration of Dr. Aldridge's opinions is accordingly meritless.

### C. ALJ's Evaluation of the Opinions of Dr. Link, and Mr. Miller and Dr. Hatfield

Dr. Link conducted a psychological evaluation of plaintiff on 24 May 2010, including administration of an intelligence quotient ("IQ") test, the third edition of the Weschler Adult Intelligence Scale ("WAIS-III"). Tr. 410-14. He interpreted her IQ test scores, which he did not fully credit, as indicating "[e]stimated borderline intellectual functioning versus mental retardation, mild." Tr. 413. He further concluded:

> In this examiner's judgment, the primary reason that she would not be able to work is more related to her reported medical conditions. She is complaining more significantly of having difficulties with respiratory difficulties. The history of jobs, which she has had in the past, would suggest that she does have the capacity to handle task[s] in work environments where the domains are clear and routine. Her possession of a driver's license would also indicate that she has the capacity to handle those types of jobs. As noted, this examiner does not believe that her full-scale IQ of 59 really represents her functional skills.

Tr. 413. Dr. Link gave plaintiff a global assessment of functioning ("GAF") score of 70, indicating mild symptoms.[3] Tr. 413; *see also* Tr. 11 ¶ 2 (ALJ's summary of Dr. Link's report).

Mr. Miller conducted a psychological evaluation of plaintiff on 14 November 2011 which, as indicated, was co-signed by Dr. Hatfield. Tr. 380-83. The report diagnosed plaintiff as possibly mildly mentally handicapped. Tr. 382 ("Rule Out Mild Mentally Handicapped?"); *see*, *e.g.*, *Smith v. Colvin*, No. 4:12-CV-237-D, 2013 WL 6247216, at *7 (E.D.N.C. 11 Oct.

---

[3] The GAF scale measures a person's overall psychological, social, and occupational functioning. Am. Psych. Assn., *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. text rev. 2000) ("DSM–IV–TR"). Selected GAF scores have the following meanings:

> 90-81 Absent or minimal symptoms (e.g., mild anxiety before an exam), good functioning in all areas, interested and involved in a wide range of activities, socially effective, generally satisfied with life, no more than everyday problems or concerns (e.g., an occasional argument with family members).
>
> 80-71 If symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork).
>
> 70-61 Some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.
>
> 60-51 Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).
>
> 50-41 Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).
>
> 40-31 Some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school).
>
> 30-21 Behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends).

DSM–IV–TR 34. The current, fifth edition of the DSM does not include the GAF scale. DSM-V 16. It was published, though, in May 2013, after issuance of the report of Mr. Miller and Dr. Hatfield.

2013) (noting that "rule out" signifies that a medical condition is suspected, but not confirmed) (collecting cases), *mem. & recomm. adopted by* 2013 WL 6178584, at *1 (25 Nov. 2013). It further concluded:

> Maggie Woods is a 46-year-old individual not appearing in distress today at all. She is friendly, interactive and pleasant. There are no symptoms of a mood disturbance. She denied drug or alcohol abuse or legal difficulties. She has had a valid driver's license and was rather vague and simply stated, "they just were not renewed." Her vocabulary was fine. Eye contact was good. There were no symptoms of a dissociative disorder or any type of other mood issues. She has no history of early childhood abuse or neglect. Primary complaints are her medical difficulties. She had been employable until some years ago which she stated she had breathing problems. Ms. Woods is able to follow simple instructions and maintain alertness on repetitive tasks. Reviewing medical restrictions on physical stamina would be helpful. Ms. Woods' motivation at times was fair and other times appeared to be somewhat questionable. This examiner could not fully support the IQ listed on the WAIS-IV, and reviewing specific school records or other documentation for supportive evidence may be helpful.

Tr. 382-83; *see also* Tr. 11 ¶ 2 (ALJ's summary of the report of Mr. Miller and Dr. Hatfield).

The ALJ gave the opinions of Dr. Link, and Mr. Miller and Dr. Hatfield "great weight." Tr. 15-16 ¶ 4. Plaintiff contends that he erred in doing so. The court finds no error.

Plaintiff's contention appears to be based on the misapprehension that these providers did not examine plaintiff. He states:

> . . . The ALJ gave great weight to William Link PhD., and Jerry Miller MA. (Tr.128-129), who reviewed Claimant medical evidence at the reconsideration level. The ALJ reports and opinions from non-examining physicians should receive less weight than reports from treating and examining physicians. 20CFR § 8404.1527 (d)/(1) and (21-6).

(Pl.'s Mem. 12).

In any event, the ALJ clearly explained why he gave these providers' opinions great weight. He stated:

> The undersigned notes that the consulting examiners, Ferriss Locklear MD, Phillip Hatfield PhD, and William Link PhD, submitted detailed reports, which included testing, clinical interviews, and observations (Exhibit 2F, 3F, 5F, 6F, and

13
Case 7:14-cv-00220-D   Document 30   Filed 12/02/15   Page 13 of 18

7F). The undersigned finds that these examinations were thorough and consistent with the evidence of record and gives these findings great weight. . . . Interestingly, Dr. Link rated the claimant's global assessment of functioning (GAF) at 70 in his report from May 2010, which suggests minimal, if any, limitation.

Tr. 15-16 ¶ 4.

The reasons cited by the ALJ are proper considerations in evaluating opinion evidence, and they are supported by substantial evidence. Such evidence includes the opinions of Dr. Aldridge previously discussed. It also includes the opinions of nonexamining psychologist Sharon J. Skoll, Ph.D., who completed the mental health portions of the disability determination explanation form at the initial review level and whose opinions were the same as those of Dr. Aldridge. *See* Tr. 99, 102-04. Plaintiff has not identified any evidence showing that the ALJ's determination lacks the support of substantial evidence. Moreover, the restrictions the ALJ included in his RFC determination are consistent with those identified by Dr. Link, and Mr. Miller and Dr. Hatfield. For this and the other reasons stated, the court rejects plaintiff's challenge to the ALJ's assessment of the opinions of Dr. Link, and Mr. Miller and Dr. Hatfield.

## IV. ALJ'S HYPOTHETICAL TO THE VE

At the hearing, the VE testified that there would be jobs available in significant numbers in the national and local economies to a hypothetical person who has the same RFC the ALJ found plaintiff to have, along with the same age, education, and work experience. *See* Tr. 84-90. Plaintiff argues that the ALJ improperly failed to include all of plaintiff's limitations in his hypothetical to the VE. The contention fails.

To be helpful, the VE's opinion must be "in response to proper hypothetical questions which fairly set out all of [a] claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). A hypothetical question is proper if it adequately reflects a claimant's RFC for which

the ALJ had sufficient evidence. *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005); *Baker v. Astrue*, No. SAG-10-145, 2012 WL 12751, at *4 (D. Md. 3 Jan. 2012) (rejecting plaintiff's objections to the ALJ's hypothetical to the VE where "the hypothetical presented to the VE was supported by substantial evidence and adequately included all the limitations that were deemed credible by the ALJ"). The VE must accept as true the RFC as determined by the ALJ. *Hines v. Barnhart*, 453 F.3d 559, 566 n.5 (4th Cir. 2006).

The hypothetical at issue here contains all the limitations in the ALJ's RFC determination, along with the exertional level he specified. The hypothetical, with the exertional level and limitations italicized, reads:

> [A]ssume an individual the claimant's age, education and work history. This individual's capable of performing work at the *light level of exertion*, as that term is defined in the regulations, which generally includes lifting, carrying, pushing and/or pulling up to 20 pounds occasionally, 10 pounds frequently; sitting, standing, and/or walking for periods up to six hours each in an eight-hour work day with normal breaks. The hypothetical individual would need to *avoid concentrated exposures to pulmonary irritants* such as fumes, odors, dust, gas, poor ventilation and the like. The individual would need to *avoid concentrated exposure to temperature extremes of heat*; also *avoid concentrated exposure to workplace hazards*, such as dangerous moving machinery and unprotected heights; *no climbing ladders, ropes, or scaffolds*; *occasional climbing ramps and stairs*; also *occasional balancing, stooping, kneeling, crouching, crawling*. The hypothetical individual is capable of performing *simple, routine, repetitive tasks* and *maintaining attention, concentration, persistence, or pace to stay on task for two hours at a time throughout a typical eight-hour work day*, as required for the performance of such tasks. The individual would need *a work setting that's not production-based or quota based*; rather, *a goal-oriented job that primarily deals with things as opposed to people*. And when I say no production based job, a goal-oriented job, primarily dealing with things as opposed to people, I'll define that as *a low stress work setting*. So that's the definition I would give to the low-stress work setting. *No more than occasional changes in the work setting. No more than occasional decision-making as part of the job*. . . . [A]re there jobs at the light level that are consistent with these limitations?

Tr. 84-86 (emphasis added).[4]

---

[4] The ALJ posed two other, more restrictive hypotheticals to the VE, but he did not rely on the testimony elicited. *See* Tr. 88-89.

Although the VE identified three occupations available to plaintiff in response to this hypothetical, only one—electronics worker—had a reasoning level under the DOT of less than three, specifically reasoning level two. Tr. 86-87; *see also* Tr. 16-17 ¶ 9. Apparently to avoid any question that occupations he found available to plaintiff required the performance of only SRRTs, the ALJ requested that the VE identify additional occupations based on the same hypothetical with reasoning level one or two, which the VE did.[5] Tr. 87. Those occupations are, of course, small parts assembler and laundry folder, both at reasoning level two. Tr. 87; *see* Tr. 16-17 ¶ 9.

Substantial evidence, including the opinions of Dr. Aldridge, Dr. Link, Mr. Miller and Dr. Hatfield, and Dr. Skoll, supports the ALJ's RFC determination. Plaintiff has not identified any specific physical or mental limitations that she contends should have been included but were omitted. Instead, she argues generally that the ALJ failed to include in his hypothetical the limitations identified by Dr. Aldridge, and Mr. Miller and Dr. Hatfield. As stated above, however, the ALJ's RFC determination does account for the limitations these providers identified.

For the reasons set forth, the ALJ properly relied on the VE's testimony elicited by the foregoing hypothetical that there are jobs in significant numbers in the national and local economies available to an individual with the attributes the ALJ posited. The court accordingly rejects plaintiff's challenge to the hypothetical the ALJ posed to the VE.

---

[5] *See*, *e.g.*, *Green v. Colvin*, No. 1:10CV561, 2013 WL 3206114, at *9 (M.D.N.C. 24 June 2013) (finding that a job "which requires a reasoning level of two, is compatible with Plaintiff's limitation to performing SSRT's") (citing *Meissi v. Barnhart*, 403 F. Supp. 2d 981, 984 (C.D. Cal. 2005)), *rep. & recomm. adopted by* 2013 WL 4811705, at *1 (9 Sept. 2013).

## V. CONCLUSION

For the foregoing reasons, the court concludes that the Commissioner's decision is supported by substantial evidence of record and based on proper legal standards. IT IS THEREFORE RECOMMENDED that the Commissioner's motion (D.E. 27) for judgment on the pleadings be ALLOWED, plaintiff's motion (D.E. 26) for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 16 December 2015 to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which o bjection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the**

**Memorandum and Recommendation.** *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

Any response to objections shall be filed within 14 days after filing of the objections.

This 2nd day of December 2015.

_____
James E. Gates
United States Magistrate Judge